UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
T. DANIEL JOBES and JENNIFER   :
JONES-JOBES,                   :
                               :      HONORABLE JOSEPH E. IRENAS
        Plaintiffs,            :
                               :   CIVIL ACTION NO. 03-4016 (JEI)
     v.                        :
                               :
MOORESTOWN TOWNSHIP,           :          OPINION
LEE LIEBER, RICHARD O'DONNELL, :
WAYNE O'DONNELL, DAVID         :
CONSTANTINE, WILLIAM MANN,     :
COLUMBUS BUFFETTA, VIRGINIA    :
WOOD, LEONARD WOOD, WOOD       :
FAMILY PARTNERSHIP, and        :
WADE & WOOD, LLC               :
                               :
        Defendants.            :
```

**APPEARANCES:**

LAW OFFICES OF GEORGE R. SZYMANSKI
By: George R. Szymanski, Jr.
1370 Chews Landing Road
Laurel Springs, NJ  08021
     Counsel for Plaintiffs


PARKER McCAY, PA
By: John Charles Gillespie
Three Greentree Centre
7001 Lincoln Drive West
PO Box 974
Marlton, NJ  08053

CRAMMER, BISHOP, MARCZYK & O'BRIEN, PC
By: Timothy P. O'Brien
508 New Jersey Avenue
Suite B3
Absecon, NJ  08201
     Counsel for Defendants Moorestown Township, Lee Lieber,
     Richard O'Donnell, Wayne O'Donnell, David Constantine, and
     William Mann

MARK A. RINALDI, L.L.C.
By: Mark A. Rinaldi
Willow Ridge Executive Park
750 Route 73 South
Suite 210
Marlton, NJ  08053
     Counsel for Defendant Columbus Buffetta

MARGOLIS EDELSTEIN
By: Colleen M. Ready
216 Haddon Avenue
Suite 200
PO Box 2222
Westmont, NJ  08108
     Counsel for Defendant Virginia Wood

WADE LONG WOOD & KENNEDY, P.A.
By: Howard C. Long, Jr.
1250 Chews Landing Road
Laurel Springs, NJ  08021
     Counsel for Defendants Leonard Wood, Wood Family
          Partnership, and Wade & Wood, LLC

**IRENAS**, Senior District Judge:

     Plaintiffs commenced this action against all Defendants on
August 25, 2003.[1]  Pending before the Court are four motions: (1)
Motion for Summary Judgment by Defendants Moorestown Township
("Moorestown"), Lee Lieber, Richard O'Donnell, Wayne O'Donnell,
David Constantine, and William Mann ("Moorestown police
officers"); (2) Motion for Partial Summary Judgment by Defendant
Columbus Buffetta; (3) Motion for Summary Judgment by Defendants
Leonard Wood, Wood Family Partnership ("WFP"), and Wade & Wood,
LLC ("WW"); and (4) Motion for Summary Judgment by Defendant

---

[1]  Subject matter jurisdiction is based on and 28 U.S.C.
§§ 1331 and 1343(3), and on 28 U.S.C. § 1332.

Virginia Wood.

Plaintiffs allege four counts against Defendants Columbus Buffetta, Virginia Wood, and Leonard Wood: (1) intentional infliction of emotional distress; (2) fraud; (3) malicious prosecution; and (4) civil conspiracy.[2]  Plaintiffs also allege battery against Columbus Buffetta.[3]  Plaintiffs' claim against WFP and WW is based on vicarious liability because Leonard Wood is an employee of these entities.

Against Defendants Moorestown police officers, Plaintiffs allege: (1) false arrest/false imprisonment; (2) malicious prosecution; (3) federal civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986; (4) violation of New Jersey Law Against Discrimination; (5) intentional infliction of emotional distress; and (6) civil conspiracy.  Plaintiffs also allege perjury against Defendant Lee Lieber.[4]

Against Defendant Moorestown, Plaintiffs allege three counts: (1) vicarious liability for the state common-law torts committed by Moorestown police officers; (2) vicarious liability

---

[2]  Upon Defendants Leonard Wood, WFP, and WW's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court dismissed Plaintiffs' claims of malicious prosecution and fraud against these three Defendants.

[3]  Defendant Buffetta does not move for summary judgment on the allegation of battery.

[4]  The Court notes that perjury is a criminal offense under N.J.S.A. § 2C:28-1.  It is not a claim actionable in a civil case.

for violation of New Jersey Law Against Discrimination; and (3) independent liability for failing to properly train and supervise its police officers concerning investigation and arrest.

For the reasons set forth below, the Motions for Summary Judgment will be granted.

## I.

Plaintiff Jobes was a 48 year-old man in 2001.  Plaintiff Jennifer Jones-Jobes is his wife.  Defendants Virginia Wood and Columbus Buffetta were 74 and 73 respectively in 2001. Plaintiffs and Defendant Virginia Wood resided in the same condominium building.  Defendant Columbus Buffetta is Virginia Wood's boyfriend who frequently visited and stayed with her.  The condominium building was owned by Defendant WFP, whose managing partner is Defendant Leonard Wood, Virginia Wood's son.

Virginia Wood claims that Plaintiff Jobes assaulted her on January 24, 2001.  She filed a private citizen's criminal complaint against him.  (Pl. Ex. FF).  This criminal complaint, along with Mr. Jobes' counter-complaint, went to community mediation.  Both complaints were dismissed by Consent Order. Defendant Leonard Wood wrote letters to Plaintiffs and the property management company regarding this matter.  (Pl. Ex. W).

On August 24, 2001, at approximately 5:30 p.m., Plaintiff Jobes arrived home from a business trip in Baltimore.  At that

time, his wife and daughter were not home.  (Crim. Trial Trans.
Aug. 1, 2002, Pl. Ex. CC at 24:8-10).  Two parking spots in the
condominium's parking lot were reserved for Plaintiffs.
Plaintiff Jobes parked his car in his reserved spot, and the
reserved spot for his wife, Plaintiff Jones-Jobes, was empty.  At
this time, Plaintiff Jobes saw a car pulling into his wife's
parking space.  Mary Karpinski, Virginia Wood's sister, and her
husband, Edwin Karpinski, were in that car.

Plaintiff Jobes walked over to the driver's side of the car
and explained to the driver that he was parked in his wife's
reserved parking space.  He asked them to move the car because he
expected his wife to be arriving home soon.  (Crim. Trial Trans.
Aug. 1, 2002, Pl. Ex. CC at 31:1-8)  An exchange took place
between Plaintiff Jobes and the Karpinskis when they did not move
the car.  But eventually the Karpinskis moved their car and
Plaintiff walked into his unit.  (*Id.* at 30:4-34:23).  Defendant
Columbus Buffetta described this exchanged as a "heated one."
(Buffetta Dep., Pl. Ex. N at 6:5-8).

Virginia Wood and Columbus Buffetta observed the exchange
from the window of their unit in the condominium.  They started
to walk downstairs.  Mr. Jobes was inside his unit at this time
and closed the door.  (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex.
CC at 35:7-12).  He heard Virginia Wood coming down the steps,
and wanted to ask her to inform her guests about the reserved

parking lots.  He opened his front door and observed Mrs. Wood
standing outside facing him directly and holding the storm door
open.  (*Id.* at 36:6-20).  Ms. Wood and Mr. Buffetta also
testified during deposition that they first encountered Mr. Jobes
that day outside of the front door to the condominium.  (Buffetta
Dep., Pl. Ex. N at 9:12-20; Wood Dep., Pl. Ex. O at 13:22-14:3).

According to Mr. Jobes, at this time, Columbus Buffetta ran
down the steps shouting repeatedly "this is not your space.  This
has never been your space."  (Crim. Trial Trans. Aug. 1, 2002,
Pl. Ex. CC at 38:2-6).  Mr. Jobes claimed that when Mr. Buffetta
reached the bottom of the steps, he punched Mr. Jobes above the
left temple on the hairline.  (*Id.* at 39:3-16).  Mr. Jobes
immediately raised his fist and hit Mr. Buffetta in the face.
The two punched each other in the torso.  (*Id.* at 39:7-11, 40:2-
4).  Mr. Jobes claims that he was turned and was pushed back by
Mr. Buffetta, falling into Ms. Wood's unit and onto the stairs
inside.  (*Id.* at 40:6-16).

According to Mr. Jobes, at this point, he was lying at a 45
degree angle on Ms. Wood's stairs and Mr. Buffetta continued to
pummel him in the torso.  (Crim. Trial Trans. Aug. 1, 2002, Pl.
Ex. CC at 41:2-5).  Mr. Jobes claims that he asked Mr. Buffetta
to stop the fight three or four times to no avail.  In order to
get Mr. Buffetta off his body, Mr. Jobes pushed him hard.  (*Id.*
at 41:15-42:5).  The push caused Mr. Buffetta to fall back

against the storm door, and the door gave way.  It opened quickly and Mr. Buffetta stumbled out of the door, waving his arms in order to catch his balance.  (*Id.* at 44:5-8).  Mr. Jobes, carried by his own momentum, followed Mr. Buffetta out of the door.  (*Id.* at 44:24-45:1).  Virginia Wood was standing outside during the struggle, holding the storm door open slightly.  Mr. Buffetta fell backwards into Ms. Wood, knocking her down.  (*Id.* at 46:10-15).

Defendants have a different account of the facts.  Defendant Virginia Wood insists that Mr. Jobes was the initial aggressor. (Def. Virginia Wood Ex. A).  She also told the police that Mr. Jobes entered their condominium unit threatening to kill her, that he punched Mr. Buffetta repeatedly about the face and body and knocked him to the floor, and that as she was going to call the police.  She also claims that Mr. Jobes grabbed her by the throat and pushed her out of the apartment.  (*Id.*).

According to Defendant Buffetta, Mr. Jobes was arguing, cursing and becoming extremely antagonistic towards Ms. Wood and Mr. Buffetta.  (Def. Buffetta Br. at p. 2).  "Mr. Jobes ... began pushing [Mr. Buffetta] backwards into Mrs. Woods' apartment where [Mr. Buffetta] eventually fell to the floor."  (*Id.*).  Mr. Buffetta also claims that he was subsequently pushed onto the floor, and Mr. Jobes began beating him in the face and back (*Id.*).

7

Mr. Jobes lost his eyeglasses during the struggle. He never recovered them. (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 47:6-8). Virginia Wood subsequently gave the eyeglasses to Leonard Wood, who turned them to the Burlington Prosecutor's Office.

Mr. Jobes claims that after Virginia Wood fell, he immediately ran back into his own condominium unit to dial 911. He told the dispatcher that he lived at 38 Eraser Road in Moorestown, that his neighbor's boyfriend had just attacked him, and that he needed police help immediately and an ambulance. (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 48:2-14). However, Defendant Moorestown claims that the initial 911 call was placed by Mary Karpinski from across the street from the condominium where the altercation took place. (Def. Moorestown Br. at p. 5). Ms. Wood also claims that Ms. Karpinski was the person who called the police from a neighbor's house. (Def. Virginia Wood Ex. A).

When Mr. Jobes came back down the stairs after dialing 911, he saw Ms. Wood lying on the ground and Mr. Buffetta down on one knee. Seeing Mr. Jobes approaching, Mr. Buffetta picked up a rock and was getting up with the rock in his hand. (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 49:22-50:1). Fearing that Mr. Buffetta would use the rock against him, Mr. Jobes pushed Mr. Buffetta and knocked him back down. Mr. Buffetta fell onto his

back and dropped the rock.  (*Id.* at 50:2-7)

By Mr. Jobes' account of the facts, at this point he stood over Mr. Buffetta and became somewhat hysterical.  (Pl. Br. at p. 10).  He began yelling at Mr. Buffetta saying that he could not believe Mr. Buffetta had attacked him.  This was the moment when Moorestown police officers arrived.  (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 50:12-14).  The police arrested Mr. Jobes immediately.

The first Moorestown police officer to arrive was Defendant Patrolman Wayne O'Donnell, followed by Defendants Patrolman William David Constantine and Patrolman Howard Mann.  Defendant Sergeant Richard O'Donnell was the last police officer to arrive.

When the officers arrive at the scene, they saw a middle-aged man, Mr. Jobes, standing over and screaming at another man in his 70s who is on the ground.  The police immediately arrested Mr. Jobes.  Mr. Jobes claims that he had told Officer Constantine that it was he who had been assaulted, and that Officer Constantine had informed Officer Wayne O'Donnell about that fact.  (Constantine Dep., Pl. Ex. H at 36:18-37:18).  The police officers arrested Mr. Jobes regardless of his statements.  Mr. Jobes claim that the police arrested him only because he was younger than Mr. Buffetta.

Mr. Jobes was taken to the Moorestown Police Department headquarters for processing.  According to Mr. Jobes, Officers

Wayne O'Donnell, David William Constantine, and Howard Mann, berated him for assaulting senior citizens.  He claims that when he explained that it was Mr. Buffetta who had attacked him, Patrolman Constantine told him that this was not an excuse for assaulting the elderly.  (Jobes Dep., Pl. Ex. C at 190:2-14).

Shortly after Mr. Jobes was arrested, Jennifer Jones-Jobes returned home.  Sergeant O'Donnell informed her that her husband was arrested.  He also asked her whether her husband was mentally ill or was on any medications.  According to Plaintiffs, Ms. Jones-Jobes replied that her husband took Zoloft for depression. (Pl. Br. at p. 13).

Patrolman Wayne O'Donnell signed a criminal complaint on August 24, 2001, charging Daniel Jobes with aggravated assault, burglary and terroristic threats.  Municipal Court Judge Alfred Faxon set bail on the condition that Mr. Jobes be psychiatrically evaluated before his released from the Burlington County Jail in Mount Holly.  Mr. Jobes was held on twenty-four hour lock down that weekend for three days.  He was permitted to be out of his cell for one phone call a day and one shower.  Mr. Jobes claims that this incarceration has had a severe psychological impact on him, (Pl. Br. at p. 19), and that Sergeant O'Donnell discriminated against Mr. Jobes by describing him as "crazy" for his depression.

Two Moorestown police detectives, Charles Viggiano and James

Dever, were sent to Virtua West Jersey Hospital to take Virginia Wood and Columbus Buffetta's statements.  Plaintiffs claim that the statements contain false information because Mr. Buffetta and Mrs. Wood claimed that it was Mr. Jobes who had initiated the assault, and that Ms. Wood grossly exaggerated her injuries.

Plaintiffs claim that Ms. Wood suffered only minor scratches and bruises, not a fractured skull or a concussion.  Virginia Wood's medical record indicates that the CT scan of her head shows "possible skull fracture, [but] otherwise unremarkable." (Def. Ex. B at p. 5).  Another portion of her medical record states that the "significant findings were evidence of contusion around her head and neck and at the base of the neck, tenderness at the occiput.[5]  The right elbow had abrasions and some pain with motion.  The finger was either bluntly lacerated or contused."  (*Id.* at p. 6)

Defendant Lee Lieber of the Moorestown Police Department was assigned to be the lead detective on this matter.  He did not read any medical records of Virginia Wood, but he spoke to Ms. Wood and one of Ms. Wood's treating doctors.  (Dever Dep., Pl. Ex. K at 16:3-24).  Detective Lieber signed a criminal complaint on August 29, 2001, charging him with second degree assault and burglary, more serious charges than the initial ones brought by

---

[5]  Occiput is the posterior part of the head.  <u>Dorland's Medical Dictionary</u>, 28th Ed.

Officer Wayne O'Donnell on August 24, 2001.

Mr. Jobes and his defense attorney hoped that he would be admitted into the Pre-Trial Intervention Program for first time offenders who have good records.  His application was initially accepted and he was admitted into the program.  However, Mr. Jobes claims that after Defendant Leonard Wood learned from the Burlington County Prosecutor's Office that Mr. Jobes had been approved for admission into the Pre-Trial Intervention Program, he wrote letters of protest to Robert Bernardi, the Burlington County Prosecutor, and to a number of state officials, including State Senator John Adler, State Senator Martha Bark, and Assemblyman Francis Bodine, protesting this decision.  (Pl. Ex. W).  As result of the letters, Mr. Jobes claims, his admission into the Pre-Trial Intervention Program was revoked.

In Mr. Wood's letter to Robert Bernardi on September 10, 2001, he stated that "this was a violent and brutal attack that occurred upon my mother as well has her friend Columbus, while they were in my mother's condominium.  This was a totally and completely unprovoked attack by an individual who I believe is in his thirties, against a woman who is seventy-four and a man who is seventy-three.  You should be aware that this is the second time that Mr. Jobes has physically assaulted and attacked Mrs. Wood."  (Pl. Ex. W).  Mr. Jobes claims that the allegations contained in the letter are false.  (Pl. Br. p. 49).

12

Mr. Wood also wrote a letter on September 10, 2001, to Bobbie Delaroi, the Victim-Witness Coordinator for the Burlington County Prosecutor's Office.  He stated in the letter that Mrs. Wood suffered a "severe concussion."  (Pl. Ex. W).  Mr. Jobes claims that this was another attempt to influence the Prosecutor's Office against him by using false information.  (Pl. Br. p. 49).

While the case was pending trial, Mr. Jobes was released on the condition that he must not have any contact with Mr. Buffetta or Ms. Wood.  Therefore, Mr. Jobes and his family had to move to the home of Jennifer Jones-Jobes' parents in Camp Hill, Pennsylvania, for six to eight weeks.  (Jones-Jobes Dep., Pl. Ex. C at 62:21-63:8).

Mr. Jobes was tried in the Superior Court in Burlington County on July 30, 2002, and was acquitted of all charges by the jury on August 2, 2002.  (Second Amended Compl. ¶ 59).

Plaintiffs claim that after the August 24, 2001, incident, Mrs. Jones-Jobes missed three months of work because she was in shock.  (Jones-Jobes Dep., Pl. Ex. C at 58:16-25).  She claims that she was examined by her physician, Dr. Buck, and a psychologist, Dr. Steffi Ambrose, and received disability benefits.  (*Id.* at 59:1-25).  Dr. Small, a psychologist, diagnosed Mrs. Jones-Jobes as having post traumatic stress disorder, adjustment disorder with mixed anxiety, and depression.

(Pl. Ex. D).  In 2004, Mrs. Jones-Jobes continued to see Dr.
Ambrose once a month.  (Jones-Jobes Dep., Pl. Ex. C at 88:17-22).
She returned to her previous employment in Cherry Hill, New
Jersey, in January, 2002.  (Jones-Jobes Dep., Pl. Ex. C at 64:5-
8).

After moving out of Mrs. Jones-Jobes' parents' house,
Plaintiffs purchased a house in Mechanicsburg, Pennsylvania
instead of returning to Moorestown, New Jersey.  Plaintiffs claim
that they made the decision to move away because they did not
want to encounter Ms. Wood and Mr. Buffetta again.  Because of
the difficult commute between Mechanicsburg and Cherry Hill, Mrs.
Jones-Jobes left her employer, where she made $22 per hour and
received benefits including health, dental and life insurance and
401k savings.  (Jones-Jobes Dep., Pl. Ex. C at 70:22-71:16).  Her
new jobs paid between $12 and $20 per hour, with no benefits.
(*Id*. at 74:15-25)


                                **II.**

"Under Rule 56(c), summary judgment is proper 'if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law.'"
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  (quoting

                                  14

Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation and citation omitted; ellipsis in original).

### III.

### A.

Plaintiffs contend that the arrest, imprisonment, and prosecution of Mr. Jobes were without probable cause. Thus, Plaintiffs assert claims of malicious prosecution, false arrest, and false imprisonment against Defendants Moorestown police officers pursuant to 42 U.S.C. § 1983. Plaintiffs also claim that Defendant Moorestown is independently liable for its acquiescence to the police's unconstitutional practices.

In a § 1983 case, a court is required to consider, as a

15

threshold question, whether the defendant has violated a plaintiff's constitutional rights.  This question must be considered in the light most favorable to the party asserting the injury.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The essence of Plaintiffs' three § 1983 claims distills down to the question of probable cause.  In order to prevail on their section 1983 malicious prosecution claim, Plaintiffs "must establish, among other things, an absence of probable cause for the initiation of the proceedings against [Mr. Jobes]." *Montgomery v. DeSimone*, 159 F.3d 120, 124 (3d Cir. 1998); *see also Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir.1989).

To prevail on their false arrest claim, Plaintiffs must demonstrate that the police lacked probable cause to arrest Mr. Jobes.  *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).  "The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988).

A false imprisonment claim under § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law.  *Baker v. McCollan*, 443 U.S. 137, 142 (1979).  The Supreme Court in *Baker* made it clear that an arrest

16

based on probable cause could not become the source of a claim for false imprisonment. *Id.* at 143-44. On the other hand, when "the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

In general, "the question of probable cause in a § 1983 damage suit is an issue for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998). However, a District Court may conclude that probable cause exists as a matter of law, and grant summary judgment if the evidence, when viewed in the light most favorable to Plaintiffs, reasonably would not support a contrary factual finding. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Furthermore, "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with ... or whether a person is later acquitted of the crime for which she or he was arrested." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)(internal citations and quotations omitted); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

Under the holding of *United States v. Watson*, a police officer, when authorized by law, may make an warrantless arrest without violating the Fourth Amendment when probable cause of a crime exists. 423 U.S. 411, 417 (1976) ("The necessary inquiry, therefore, was not whether there was a warrant or whether there

17

was time to get one, but whether there was probable cause for the arrest.").

Probable cause is "a fluid concept - turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause for arrests exists "where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992); *see also United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990).

Plaintiffs assert that the police "essentially ... conferred quickly, exchanged some conjectures among themselves, noticed the discrepancy in the ages of Daniel Jobes, Columbus Buffetta, and Virginia Wood, and arrested Mr. Jobes..."  (Pl. Br. at p. 37).

However, Plaintiffs' own account of the facts contradicts their theory.  According to Plaintiffs, Mr. Buffetta and Mr. Jobes engaged in a struggle.  During this struggle, Mr. Jobes pushed Mr. Buffetta, causing Mr. Buffetta to fall back through the storm door, knocking Ms. Wood to the ground.  (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 41:15-42:8).  Mr. Jobes claims that Mr. Buffetta had picked up a rock and was getting up from the ground with the rock in his hand.  (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 49:22-50:1).  Mr. Jobes then pushed Mr.

Buffetta and knocked him back down.  Mr. Buffetta fell onto his back and dropped the rock.  (*Id.* at 50:2-7).  Then, Mr. Jobes stood over him and became somewhat hysterical and began yelling at Mr. Buffetta when the Moorestown police officers arrived and saw this scene.  (Crim. Trial Trans. Aug. 1, 2002, Pl. Ex. CC at 50:12-14).

Furthermore, in the Affidavit of Probable Cause, the police reported that the Karpinskis told them that "they observed the defendant [(Mr. Jobes)] subsequently shoved Buffetta to the ground with both hands, screaming at him the whole time and observed [Ms.] Wood incapacitated on the ground." (Def. Buffetta Ex. D).

Under these circumstances, the record only supports a finding that probable cause exists for arresting Mr. Jobes.  The facts and circumstances within the arresting officer's knowledge, according to Plaintiffs' account of the facts, can be summarized as the following: (1) a 40-something male, standing over a couple in their 70s, yelling and screaming; (2) an elderly woman lying on the ground, apparently suffered some injury; and (3) interview with the Karpinskis confirmed that Mr. Jobes shoved Mr. Buffetta to the ground with both hands.  Thus, these observations are "sufficient to warrant a reasonable person to believe an offense had been committed." *McGlory*, 968 F.2d at 342.  Specifically, Moorestown police officers could have had reasonable belief that

19

Mr. Jobes committed assault against Mr. Buffetta.  *See* N.J.S.A. § 2C:12-1.

Subsequent to his arrest, Mr. Jobes was promptly brought before Municipal Court Judge Albert Faxon, who set his bail condition and ordered psychiatric evaluation.  (Def. Moorestown Bf. at p. 12).  Judge Faxon's determination and reaffirmation of probable cause to arrest and to detain Mr. Jobes conformed to the requirement of *Gerstein*, 420 U.S. at 114.

In addition, according to Plaintiffs, Defendants Virginia Wood and Columbus Buffetta's each gave a recorded statement, testifying to their account of the facts.  (*See* Pl. Br. at p. 25).  With information furnished by the police and by these statements, the prosecutor submitted the charges to a Burling County grand jury, who returned an indictment.

Finally, Defendant Lee Lieber testified during deposition that before the criminal complaint was executed, Judge Yocum reviewed the charges for probable cause, and found that probable cause existed to execute the complaint.  (Lieber Dep., Def. Moorestown Ex. S at 49:20-50:5).  Plaintiffs offered no evidence to the contrary.

Thus, a careful review of the record does not support the claim that Defendants Moorestown police officers arrested, detained, and charged Mr. Jobes without probable cause. Defendants Moorestown police officers are entitled to summary

judgment as to § 1983 claims of malicious prosecution, false arrest, and false imprisonment.  Furthermore, because Defendants Moorestown police officers did not violate Mr. Jobes' constitutional rights, Defendant Moorestown could not have acquiesced in any unconstitutional conduct.  Therefore, Defendant Moorestown is entitled to summary judgment as to its independent municipality liability.  Similarly, Defendants Moorestown and Moorestown police officers are entitled to summary judgment as to civil conspiracy based on § 1983 claims.  *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d 781, 789 (3d Cir. 1999)("[T]he law uniformly requires that conspiracy claims be predicated upon an underlying tort that would be independently actionable against a single defendant.").

**B.**

Plaintiffs next claim that under New Jersey state law, Defendants Moorestown police officers are liable to them for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotion distress, and violation of New Jersey Law Against Discrimination (the "LAD").  Plaintiffs also claim Defendant Moorestown is liable under the theory of vicarious liability.[6]

---

[6]  The New Jersey Tort Claims Act (the "NJTCA") mandates that Plaintiffs give notice to public entities and employees "not later than the ninetieth day after accrual of the cause of

i.

Under New Jersey law, a "malicious prosecution action
arising out of a criminal prosecution requires proof: (1) that
the criminal action was instituted by the defendant against the
plaintiff, (2) that it was actuated by malice, (3) that there was
an absence of probable cause for the proceeding, and (4) that it
was terminated favorably to the plaintiff." *Lind v. Schmid*, 67
N.J. 255, 262 (1975).

The essence of this claim is the lack of probable cause, and
the burden of proof rests on Plaintiffs "to establish that
probable cause did not exist." *Varriale v. Borough of Montvale*,
No. 04-199, 2006 WL 1806411, *12 (D.N.J. Jun 29, 2006). A
favorable termination of the criminal proceeding sheds no light
on the existence of probable cause at the time of the initial
complaint; the burden remains on Plaintiffs to demonstrate by

_____

action." N.J.S.A. § 59:8-8. However, a reasonable
interpretation of another section of the NJTCA eliminate this
protect for public employees who committed intentional torts.
*See* N.J.S.A. § 59:3-14(a) ("Nothing in this act shall exonerate a
public employee from liability if it is established that his
conduct was ... willful misconduct.").

The Supreme Court of New Jersey, while holding that
intentional torts are encompassed by the notice provision of
N.J.S.A. § 59:8-8, did recognize the alternative, reasonable,
interpretation. *Velez v. City of Jersey City*, 180 N.J. 284, 297
(2004). Thus, notice requirement for intentional tort claims
against public employees applies only to cases commenced after
June 29, 2004. While Plaintiffs did not give notice to
Defendants Moorestown and Moorestown police officers, at the time
of this case's commencement, such notice was not required.

independent proof that the criminal complaint was filed without probable cause. *Campione v. Adamar of New Jersey, Inc.*, 302 N.J. Super. 99, (App. Div. 1997).

New Jersey public policy disfavors the claim of malicious prosecution "because of the policy that people should not be inhibited in seeking redress in the courts." *Penwag Property Co., Inc. v. Landau*, 76 N.J. 595, 597-98 (1978).

"False arrest, or false imprisonment, is the constraint of a person without legal justification." *Mesgleski v. Oraboni*, 330 N.J. Super. 10, 24 (App. Div. 2000). "A [legal] basis for a suit for false arrest arises where the aggrieved party is arrested without legal authority..." *Id.* In false arrest or false imprisonment, "the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification." *Fair Oaks Hosp. v. Pocrass*, 266 N.J. Super. 140, 153 (N.J. Law Div. 1993).

The inquiry for the claims of false arrest, false imprisonment, and malicious prosecution in this case turns on whether Defendant Moorestown police officers had lawful justification for the arrest and detention of Mr. Jobes, or put another way, whether the arrest and detention of Mr. Jobes were based on adequate probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 114-15 (1975).

As the Court stated in III. A., *supra*, adequate probable

cause existed to arrest, detain, and prosecute Mr. Jobes.  Thus, the record does not support a claim of malicious prosecution, false arrest, or false imprisonment.  Defendants Moorestown police officers are entitled to summary judgment as to these claims.  Defendant Moorestown is entitled to summary judgment for vicarious liability based on these claims.  *See* N.J.S.A. § 59:2-2 ("A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.").  Summary judgment is also granted with respect to civil conspiracy claim based on the above causes of action.  *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d at 789.

ii.

Plaintiffs also claim Defendants Moorestown police officers committed intentional infliction of emotional distress and violated the LAD.

N.J.S.A. § 59:3-3 states, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."  Under this provision, immunity for police officers may be established "if the public employee can show either objective or subjective good

24

faith." *B.F. v. Division of Youth and Family Serv.*, 296

N.J. Super. 372, 385 (App. Div. 1997); *Green v. City of Paterson*,

971 F. Supp. 891, 910 (D.N.J. 1997).  Furthermore, "[i]f a public

employee's conduct is objectively reasonable, subjective good

faith need not be established to prevail on a motion for summary

judgment." *Green*, 971 F. Supp. at 910.  "Subjective good faith

... remains available to a public employee as a second line of

defense, which he may raise at trial even if he was not acting

reasonably." *B.F. v. Division of Youth and Family Serv.*, 296

N.J. Super. at 910.

    Probable cause determination is judged by an objectively

reasonable standard.  Probable cause for an arrest exists only

when a reasonable person would believe that an offense had been

committed under the facts and circumstances within his or her

knowledge.  *See McGlory*, 968 F.2d at 342; *Cruz*, 910 F.2d at 1076.

The existence of probable cause, by itself, establishes the

objective reasonableness of Defendants Moorestown police

officers' arrest and detention of Mr. Jobes.  *See Mesgleski v.

Oraboni*, 330 N.J. Super. 10, 27 (App. Div. 2000).  Thus,

Defendants Moorestown police officers are protected by the

immunity of N.J.S.A. § 59:3-3.

    Plaintiff Jobes cite to *Ptaszynski v. Uwaneme*, 371

N.J. Super. 333 (App. Div. 2004), for the proposition that a

municipal police department, as well as the individual officers,

25

are considered places of public accommodation for the purpose of LAD claims, and therefore, Moorestown police officers' actions are subject to the LAD.  Thus, since Mr. Jobes was allegedly arrested because he was younger than Mr. Buffetta, Plaintiffs claim the police committed age discrimination.

In *Ptaszynski*, four Woodridge Township police officers responded to a domestic violence call at the home of Pius Ehiri, who is of Nigerian origin, and his wife, Patricia Uwaneme, and an altercation ensued.  As a result, both were charged with various offenses.  After the criminal trial, Officer Robert Ptaszynski and his wife filed a civil suit against Ehiri, and Ehiri and Uwaneme counterclaimed against Ptaszynski for, among other claims, violations of the LAD.  371 N.J. Super. at 337-38.

The trial judge dismissed the LAD claim by reasoning that neither the police officers nor the police station was a place of "public accommodation" within the meaning of the LAD.  The Appellate Division reversed on this issue because it concluded that a municipal police department and the individual officers qualify as a "place of public accommodation" to support an LAD claim.  *Ptaszynski*, 371 N.J. Super. at 337.  Thus, the LAD is applicable to police department, as well as individual police officers.

However, the Appellate Division, while reversing the dismissal of the LAD claims by the trial court, did not comment

on the substantive standard with which to judge police actions in the context of LAD claims. *Ptaszynski*, 371 N.J. Super. at 348. Furthermore, the Appellate Division also did not comment on the immunity of the police officers under N.J.S.A. § 59:3-3.  Indeed, the Appellate Division's opinion narrowly reversed the trial court's ruling, holding only that as a matter of law, an LAD claim against the police department may proceed beyond the dismissal stage because the police department is considered a place of public accommodation.

Here, Defendant Moorestown police officers are immune from liability under the LAD for a different reason, namely the N.J.S.A. § 59:3-3 immunity.  Because these Defendants had probable cause to arrest and detain Mr. Jobes, and because such probable cause necessarily implies an objectively reasonable good faith, it is unnecessary to inquire into the motive of Defendants Moorestown police officers. *See Green*, 971 F. Supp. at 910 (objective good faith precludes the necessity to show subjective good faith).  Indeed, even if the Court removes the alleged discriminatory factor, or the age difference between Mr. Jobes and Mr. Buffetta, from the probable cause analysis, the remaining facts still warrant a finding of probable cause for arrest and detention of Mr. Jobes. *See* III. A., *supra*.

Similarly, the claim for intention infliction of emotional distress against Defendants Moorestown police officers are

precluded by N.J.S.A. § 59:3-3 immunity because these Defendants demonstrated good faith in their law enforcement actions.

Since the record does not support a claim of intentional infliction of emotional distress, or violation of the LAD, Defendants Moorestown police officers are entitled to summary judgment as to these claims.  Defendant Moorestown is also entitled to summary judgment for vicarious liability based on these claims.  *See* N.J.S.A. § 59:2-2.  Summary judgment is also granted with respect to civil conspiracy claim based on the above causes of action.  *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d at 789.

## C.

Plaintiffs claim against Defendants Virginia Wood, Columbus Buffetta, and Leonard Wood for intentional infliction of emotional distress, fraud, malicious prosecution, and civil conspiracy to commit these torts.  Plaintiffs also claim WFP and W&W are liable under the theory of vicarious liability because they are Defendant Leonard Wood's employers.[7]

### i.

To establish a claim for intentional infliction of emotional

---

[7]  The Court already dismissed Plaintiffs' claims of malicious prosecution and fraud against Defendants Leonard Wood, WFP, and W&W.

distress, Plaintiffs must prove that "(1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 348 (D.N.J. 2006)(citing *Coefield v. GPU*, 125 F. App'x 445, 450 (3d Cir. 2005)(citing *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 366 (1988))). In addition, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and intolerable in a civilized society." *Buckley*, 111 N.J. at 366.

To qualify as outrageous, "'[t]he mere fact that the [d]efendants acted for an improper purpose does not give rise to an actionable claim.'" *Acevedo*, 420 F. Supp. 2d at 348 (quoting *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 479 (D.N.J. 2001)). Indeed, the "limited scope of this tort tolerates many kinds of unjust, unfair and unkind conduct." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991).

New Jersey courts note that "[i]t is difficult to generalize as to what type of conduct is actionable..., [but] the courts have upheld liability ... where the actions are especially calculated to cause and do cause mental distress of a very

serious kind." *Hume v. Bayer*, 178 N.J. Super. 310, 315 (Law Div. 1981). Examples of such outrageous conduct include "when a physician, knowing it to be false, told parents their son was suffering from cancer; spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside a loaf of bread for a sensitive person to open." *McConnell v. State Farm Mut. Ins. Co.*, 61 F. Supp. 2d 356, 363 (D.N.J. 1999).

By Plaintiffs' account of the facts, Defendant Leonard Wood intentionally inflicted emotional distress on them by sending letters containing false information to the prosecutor's office and local politician, opposing Mr. Jobes' admission into Pre-Trial Intervention Program. (*See* Pl. Br. at pp. 48-49). Plaintiff Jobes claims that these letters resulted in the revocation of his admission into the program, causing him emotional distress. Furthermore, the subsequent trial was extremely emotionally taxing on Plaintiffs, resulting in Plaintiff Jones-Jobes' job loss and psychological suffering.

From the record, the Court cannot find that Defendant Leonard Wood's conduct was outrageous. Defendant Leonard Wood claims that he wrote the letters to the prosecutor's office in order to (1) explain the nature of the altercation and Mr. Jobes' alleged violent history; (2) express his opinion that Mr. Jobes

should be prosecuted harshly; and (3) state the fear and anxiety suffered by his mother.  (Def. Leonard Wood Br. at p. 14).

The family of a victim sometimes send letters to the prosecutor expressing their feelings.  Such letters could be partisan since they are from victims of crimes or their family members against the alleged perpetrator.  However, such communications are closely related to the criminal trials they address.  In this sense, it is arguable that such communications serve important functions as they "promote the development and free exchange of information and ... foster judicial and extra-judicial resolution of disputes."  *Hawkins v. Harris*, 141 N.J. 207, 218 (1995).

Even if the Court assumes, as the Plaintiffs claim, that the letters contain false information, it is still difficult to categorize Defendant Leonard Wood's actions as "especially calculated to cause and do cause mental distress of a very serious kind."  *Hume*, 178 N.J. Super. at 315.  These letters were not addressed to Plaintiffs, therefore Plaintiffs would not have had access to them before the current action, and the alleged false content of the letters was not immediately exposed to Plaintiffs.  Thus, unlike the case where a physician lied to parents that their son had cancer, *see McConnell*, 61 F. Supp. 2d at 363, the alleged falsehood was not directed at Plaintiffs.  Similarly, unlike the case where the defendant

31

spread a false rumor that plaintiff's son had hung himself, *Id.*, the alleged lies were not widely publicized.  Indeed, the only inference supported by the record is that Leonard Wood wrote the letters to push for stiffer prosecution of the man who allegedly assaulted his mother, not to cause emotional distress.

Plaintiffs also claim that Defendants Virginia Wood and Columbus Buffetta should be liable for intentional infliction of emotional distress because "[a]nyone directing extreme and outrageous conduct toward another intentionally ... is liable in damages to the injured person..."  (Pl. Br. at p. 27).  However, Plaintiffs point to no specific facts or evidence in the record to show that Ms. Wood or Mr. Buffetta acted in an extreme or outrageous manner.

In a careful review of the record, the Court is also unable to find any evidence of outrageous conduct.  Therefore, Defendants Leonard Wood, Virginia Wood, and Columbus Buffetta are entitled to summary judgment as to intentional infliction of emotional distress.  Defendants W&W and WFP are also entitled to summary judgment as to this claim because vicarious liability cannot be established when there is no underlying tort liability. *See Carter v. Reynolds*, 175 N.J. 402, 409 (2003).  Summary judgment is also granted with respect to civil conspiracy claim based on the above cause of action.  *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d at 789.

ii.

Plaintiffs claim that Defendants Ms. Wood and Mr. Buffetta committed fraud by misrepresenting material facts of the criminal assault case to the police and the prosecutor.  Under New Jersey law, a "misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).

Here, Plaintiffs failed to introduce any evidence that (1) Mr. Buffetta or Ms. Wood made statements to the prosecutor or the police with the intention that the other party rely thereon; or (2) Plaintiffs relied on any information provided by Mr. Buffetta or Ms. Wood.  Thus, Plaintiffs claim for fraud cannot be sustained.

Defendants Virginia Wood and Columbus Buffetta are entitled to summary judgment as to the claim of fraud.  Summary judgment is also granted with respect to civil conspiracy claim based on this cause of action.  *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d at 789.

iii.

Finally Plaintiffs claim Defendants Virginia Wood and

33

Columbus Buffetta committed malicious prosecution.[8]  The substantive standard for malicious prosecution is stated is III. B. I., *supra*.  The Court also found adequate probable cause for the prosecution of Mr. Jobes.  Therefore, Defendants Virginia Wood and Columbus Buffetta are entitled to summary judgment as to malicious prosecution.  Summary judgment is also granted with respect to civil conspiracy claim based on this causes of action. *In re Orthopedic Bone Screw Products Liability Litigation*, 193 F.3d at 789.

## V.

For reasons set forth above, the Court will grant summary judgment in favor of all Defendants.  The remaining claim in this case is for battery against Defendant Columbus Buffetta.  The Court initially acquired subject matter jurisdiction over the battery claim pursuant to supplemental jurisdiction under 28 U.S.C. § 1367.  Because the parties have engaged in extensive motion practice and discovery, it would be wasteful to dismiss the case at this stage of the litigation.  Therefore, after disposing of all federal claims, the Court will exercise its discretion to retain jurisdiction over the state law claim.  *See*

---

[8]  Because Defendant Wood and Buffetta are not state actors and Plaintiffs did not alleged that they acted under color of state law, § 1983 malicious prosecution claim does not apply. Only the state law claims is available.

28 U.S.C. § 1367(c)(3) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction.") (emphasis added).[9]  The Court will issue an appropriate order.


Date: October 19, 2006


                              s/Joseph E. Irenas
                              **JOSEPH E. IRENAS**
                              Senior United States District Judge

---

[9]  Alternatively, the Court has subject matter jurisdiction over the battery claim pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant Buffetta are completely diverse and the amount of controversy does not appear, to a "legal certainty," to be $75,000 or less.  *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938).